Good morning. May it please the Court, my name is Kristen Renfro, representing Debtor and Appellant Gregory Bos. I would like to reserve about six minutes of my time for rebuttal. Just keep your eye on the clock, Counselor. Will do. Time is yours. Thank you. This case is a non-dischargeability action under Bankruptcy Code Section 523A4, and it involves two distinct but somewhat interrelated issues concerning what the standard for defalcation is, which we've recently learned from the U.S. Supreme Court in Bankruptcy, or in Bullock v. Bank Champaign, requires a particular culpable state of mind, which was not the standard applied at the trial court or in the appellate court, the district court below. It also involves a question of whether future contributions, not paid, can be considered assets, present assets, of the trust funds with which Mr. Bos could be construed a fiduciary over, and could possibly have been deemed to have breached his fiduciary duties to make those payments to the funds. Let me ask you this. So our case, Klein, says the answer to that question is no, that you can't be an ERISA fiduciary because of unpaid employer contributions. Correct. And so we've never held, as the district courts have, that there's an exception to this rule based on contract. Is there any reason why we shouldn't find that parties could agree that unpaid employer contributions are part of the ERISA fund, the fund that's owned by the plan, that's an asset of the plan? Yes, Your Honor, there are very good reasons. It is a very unworkable proposition to suggest that something is an asset which doesn't exist. The argument that's been made by the trust funds is that Mr. Bos somehow should have either not paid other business expenses or by not maybe setting aside money to make his contributions that somehow this is a workable proposition, that because he was going to owe money, that that knowledge would somehow create an asset with which he was entrusted. Well, what if the contract required him to put money into an escrow account that was earmarked for his contributions? Could that be an asset of the fund? I think that would be a very distinguishable situation, because we don't have anything like that here. All we have in the contract language here is a statement that contributions... Well, that's a different question as to whether the contract here creates that. I want to know, as a threshold, just is there any reason why we couldn't say that a contract, hypothetically, some sort of contract, and the district court cases have a whole range of contract language, could make unpaid employer contributions an asset of the fund? Well, I think that a circumstance like that would be more similar to when an employer is actually an administrator, where they're actually responsible for maintaining funds that benefit contributions are allocated into. I mean, yes, if there was a responsibility for BOSS to maintain under a contract, or any employer under a contract, a particular fund of money that was not to be touched other than to allocate it for this purpose, certainly, I think that the employer could be a fiduciary over those funds. But here, we don't have a fund. We don't have a bank account. We don't have any identifiable assets. We have Mr. BOSS's business's income. What we have, though, is a promissory note, right, that came about after he failed to make the payments timely. And in the promissory note, he agrees that he's a trustee, and the promissory note has a personal guarantee. Now, why wouldn't the trust say that's as good as money in the bank? We have specific contract obligations to pay the amounts on behalf of employees, and we have a personal guarantee from the promissor. Well, what Mr. BOSS agreed to do was to make catch-up payments. He agreed to bind himself contractually to do that. But he didn't agree that any money or assets in his possession were assets of the fund. What's the effect of the personal guarantee? It's a promise to pay, Your Honor. Beyond the assets of the business, though, right? Personal guarantee means that even if I can't make good on this with the assets of the business, you can come after my personal assets to get it. It sounds like it's a little more solid than just a promise. Well, I don't know about that, Your Honor, because the very nature of the system of contributions, and in that context, the catch-up payments, everybody acknowledged in the situation that Mr. BOSS did not have the money to make those payments. He didn't have those assets. He was obligating himself to, in the future, make payments. So the note is not a planned asset because it's worthless? Is that what you're saying? No. It certainly gives the funds the right to seek collection. It certainly gives them the right. I don't believe there was any collateral with which they obtained a particular interest in. What they had was a right to pursue remedies, very stringent remedies, under ERISA. There are enforcement actions and there are penalties. If you think someone has intentionally violated those obligations, you can get pecuniary damages. I mean, if you really think they're a bad guy, you can obtain criminal penalties. But the fund owns the promissory note. I mean, the promissory note was given to the fund. That's something that the fund could contractually enforce or could bring an action to enforce. But I don't – does that make Mr. BOSS a fiduciary? Is he owning a contractual right to enforce the promissory note? Well, what Mr. BOSS – the benefit to him was an acknowledgment that, yes, I owe this money and here, let's come up with a payment plan that I think I can make work and I can promise to make these payments, which he intended his business to pick up and to be able to do that. But he wasn't obligating himself to, you know, liquidate any of his own assets or create – there are cases that talk about, well, maybe when money comes in, it should be segregated in anticipation of making payments. There wasn't any specific responsibility for Mr. BOSS to do that type of thing. I don't know how you can say that because I've looked at the record, page 1375 in the excerpts of the record, and it's very clear that he gave a personal guarantee. I mean, beyond the obligation to pay under ERISA or any other law provision, he said, if this amount that the arbitrator awarded and that was later compromised, the payment plan was scheduled, if it's not otherwise paid out of assets, you can foreclose on my house, you can take my automobile, you can get whatever personal property I have in satisfaction of the debt. Isn't that what he did here? Well, but this is why we ended up in bankruptcy court, Your Honor, is that Mr. BOSS's obligations exceeded the assets that he had at his disposal. And we have the bankruptcy system and the protections for debtors who are honest but become overwhelmed by circumstances beyond their control. Mr. BOSS was caught up during a recession that unfortunately consumed a lot of very good, honest business people. He lost state contracts he anticipated that he would have, and he lost the ability to make good on those payments. All of that really goes to the Scientra question, though, doesn't it? In part. Whether he did this intentionally or some bad purpose or was just a victim of a bad economy? It doesn't really go to the character of the promissory note and whether that can be claimed as a trust asset. Well, Your Honor, I only raise it to try to bring us back to the context within which we're located, which is a bankruptcy petition. Mr. BOSS simply did not have the ability to pay all of his debts. And there are exceptions to discharge. Those are particularly spelled out in statute. And they're to be narrowly construed. And so we have this 523A4 defalcation exception basis. And Mr. BOSS simply doesn't fall within that. He was only, if he was arguably a fiduciary under ERISA, it was only to the extent that he exercised any authority or control over plan assets. And to date the arguments that we've heard is that somehow by making other payments of salaries or paying the rent for the company's location, things of that nature, that every time he did that, every time he spent a dollar of money, it was a defalcation. And so the idea that everyone would have signed off after arbitration and allowed him to execute that promissory note, knowing the intention was for him to remain in business, to try to make money, to try to be able to pay off the obligations, everyone thought that was a reasonable course of action. Otherwise, why not file bankruptcy right that day and make him liquidate whatever assets he had and take their losses? And everyone thought that the best course of action was for him to remain in business so that he could try to catch up and ultimately pay those monies. Counsel, if we disagree with you on the fiduciary capacity issue, can you still prevail with respect to the standard, to the Bullock issue? Yes, Your Honor, absolutely. And I don't even think this is a record with Judge Russell's thoughts at the bankruptcy court about how he thought that all of the surrounding circumstances in the case indicated Mr. Boss was an honest individual, that he honestly thought he was going to be able to pay back the obligations, but that the circumstances overwhelmed him, made him unable to do so. He just simply did not have the kind of culpable state of mind that Bullock calls for. Counsel, you're down to less than four minutes. I would love to reserve that, thank you, Your Honor. We'll hear from the other side. Good morning, Your Honors. If it pleases the Court, my name is Tracy Menge, and I'm here on behalf of the appellees, the Carpenters Trust Funds. The Carpenters Trust Funds are taft, hearty, multi-employer benefit plans. They're governed by ERISA. The unpaid contributions are defined as plans of the asset under the trust agreement. Okay, so I didn't really see that, and this was like a concern I had. We have a rule, Klein, that says unpaid contributions are not assets of the fund, and the district courts have made various exceptions based on contract, but the contractual language says employers agrees that his payment will be or do an owing payment, money is due an owing, will be assets of the fund. Now, we have said the Eleventh Circuit, which you rely on in ITP v. Hall, says, agrees that there's this exception if the agreement between the fund and the employer are specifically and clearly declares that. So what language do you rely on in the trust document that would put an employer on notice that unpaid contributions are an asset of the fund? I would cite your honors to Article 2, Section 1 of each of the trust agreements. They're located in the excerpts of the record, and they say each individual employer should contribute to. Do you have the page number in the SCR? It probably starts at 1237. Here we go. For instance, the Carpenters Pension Trust Fund, on page 130 of the trust fund's excerpts of the record. Now, wait a minute. This is not the trust agreement? We're in the trust agreement for the Pension Trust Fund. It's at page 131, Volume 1 of the trust fund's excerpts of the record. Article 2, Section 1, the Carpenters Trust Fund for Northern California shall consist of all contributions required by the collective bargaining agreement or subscriber's agreement to be made for the establishment and maintenance of the pension plan, and all interest, income, and other returns of any kind in any other money or property received or held by reason or pursuant to this trust fund. So you're hanging your hat on this to be made for, which doesn't sound like the language, even in the district court cases, like Temecula, where the language is much stronger. The assets of the trust fund consist of the sums of money that have been or will be paid or which are due or owing to the funds by the employer. So it says very expressly that the trust fund consists of sums of money which are due or owing. Is there any other language in the trust agreement that would be more express as to this contractual agreement? Well, it says required to be made. So it doesn't. So that's the best language you have. And the collective bargaining agreement requires that the contributions are going to be paid for every hour worked or paid to the employee, whichever. Yes, that's what the contributions will be. Is there a district – I couldn't find a district court case that came close to this language. The Temecula mechanical case, which the central district court recognized an exception to the Klein rule, is very similar. I just read that to you. It says sums of money that have been or will be paid or which are due and owing to the fund by the employers. Will be made is all the contributions that shall be. Our language states shall consist of all the contributions required to be made. And the language of Temecula mechanical is will be made. Or which are due and owing to the funds by the employers. Right. And I would cite, Your Honor, to the court's decision in the Moxley case, which was recently decided by the Ninth Circuit. And in that case, the court looked at this identical language when I'm citing to you Article 2, Section 1. And we made the same arguments with respect to unpaid contributions being defined as assets of the plan. And on that panel, Judge Schroeder sat, who decided the Klein case. And she said that the trust funds, and I quote, the trust fund makes a persuasive case that given the provisions of this agreement, unpaid contributions required by the agreement can be considered plan assets. Was that the holding of the case? That was not the holding of the case. That case is distinguishable from this case because it involved withdrawal liability. And it said that withdrawal liability is a creature of statute. It is not a contractual debt. Therefore, the court said that it was not an asset of the plan. But the court said that, indicated that its ruling would have been different had it been a case on unpaid contributions. Are we talking about Moxley? Right. I'm reading here we do not have to decide the question of whether unpaid contributions are plan assets. I'm looking at page 869 of the opinion. Well, it's true they didn't decide it. I think the court gives an indication of its interpretation of the language in this collective bargaining agreement that's insightful given the fact that Judge Schroeder decided the Klein case. And the Klein case is silent on whether there was exception. I listened to the oral argument for the Moxley case. And Your Honor asked the same question as Judge Schroeder in having read the language and being familiar with the Klein case. She acknowledged that there was an exception to Klein that was well recognized based on the decisions following the Temecula mechanical case, and that the language stated in Article II, Section 1 was sufficient to satisfy that. As I say, this was a withdrawal liability case. But it's not binding on us. There are other decisions from the lower courts in this circuit that also. What's the best district court case that has language most similar to what's in this trust agreement? Because I'm sure you're familiar with the whole range of district court cases. What would you say would be the best, the most similar, where they found a, that it was an asset of the trust? I would say if you look at the case, give me one minute, because this is really a contract issue and what the parties agreed to. And it's hard for me to see in that language that an employer would have known that he would become a fiduciary of the fund if he was late in paying his contributions. Okay. I'd cite the case to trustees of the Bricklayers and Allied Craft Workers, Local 13, defined contribution pension trust fund for South Nevada versus Granite Works, where some's due and owing, some's shall be paid or required to be paid, or some's that become non-trust assets on the due date. So much more extensive than what we have here. I would cite to this district court's finding in the Board of Trustees versus Riverview construction case, that's a district court decision from the Northern District of California. Now, it's not a bankruptcy court decision, but it deals with language in the laborer's trust fund agreement, which is very similar to this. And it says that all contributions required to be made are planned assets. And the district court in the Northern District found that that was sufficient language. It's very, very similar to what we have here. Excuse me. Would you repeat the name of that case? Board of Trustees? Board of Trustees versus Riverview Construction. Riverview. I'm not finding it. Was it cited in your brief? It is not cited in our brief. Is it cited in the other brief? No. But this is a new case? It is a recent case. Did you send a 20HA letter to us? No. Your Honor, I would also cite the case, the court, to the decision in JRD Mechanical. Are you relying to any extent on the language of the promissory note in making your contract argument? We're relying on the language of the trust agreement. Right. But the promissory note, to some extent, incorporates that. And as I read the promissory note, it says that if Boss were to fall delinquent again, the entire amount is due and payable at the trustee's options as liquidated damages, and it sets forth a process for grievance, which includes arbitration, which the parties went to in this case. Is there anything in the promissory note that you think we should look to in support of your contract argument? Does he agree that he'll be a fiduciary of planned assets in that note? By agreeing to the debt, he agrees. To take personal liability for that debt. So he agrees to the debt. And the question is whether he was a fiduciary before the debt was created, correct? He was a fiduciary under arrest and was personally liable for the debt. And you're relying on that language in the trust agreement to make that argument. Is that right? I'm relying on his personal liability is set forth in section 1109 of ERISA, which provides that if you breach your fiduciary duty to pay contributions by engaging in self-dealing, you take personal liability for the debt. Notwithstanding what Klein says? What makes him a fiduciary, because I don't see any way to make the employer a fiduciary unless he has authority to control planned assets. And the only thing that arguably does that or that you're arguing does that is that language in the trust agreement. Well, I think, Your Honors, if he personally took liability under the note for the contributions and he's acknowledging that debt, and he's acknowledging the basis for that debt, and by doing so, he's taking liability under the note  the basis for that debt. Adopting a position of control over planned assets. Because? Why? Because the trust fund unpaid contributions, according to that language. So we get back to that language in the trust agreement. Thank you. Counsel, I think we understand your argument, and you've obviously covered it in the brief. Anything further you want to say? I would say that in this case, based on the plan language, unpaid contributions are assets of the trust fund, and that nothing in the Bullock decision disturbs the finding of the lower court, because to the extent that the employer had control over the planned assets, he breached his duty of loyalty by paying, prioritizing and paying his bills when knowing full well that he could not pay the trust fund contributions. What do we do, though, with the finding of the bankruptcy judge, that that wasn't the case, that it was just a bad run of business, either on his part or because of the economy? Well, the court didn't. The court made a finding in regard to the 523A6 claim that there wasn't willful and malicious injury, and in doing so, he thought that the debtor didn't engage in fraud. But when the court made its decision, it didn't make findings with respect to a 523A4 mens rea requirement, and the Bullock decision makes it very clear that fraud is not the equivalent of a defalcation, and you could have a nonfraudulent defalcation, that it doesn't involve a false statement. What defalcation, what the intent standard there is, did he understand what his risk of fiduciary duty was, in this case, to pay the money over to the trust fund, and did he intentionally not discharge that duty? In this case, we have evidence to answer that question in the affirmative. Thank you, counsel. Your time has expired. We will hear from Ms. Renfro. You have some reserve time. Thank you, Your Honor. To answer the question that was posed about are there, from my perspective, my client's perspective, are there any cases with language in the trust agreement similar to ours? I would cite the case to what we cited in our brief, which is the case of Bonilla v. EG Construction, which was a Northern District of California case. It's not a bankruptcy case. It was, I believe, an ERISA enforcement action. But it was nearly identical language to what we have here, payment made or to be made to the fund by an individual employer. And the court distinguished specifically Temecula and some other cases along that line and held that the individual, the debtor, or not the debtor in that case, but the gentleman was not liable as a fiduciary under ERISA because he didn't control plan assets. And I think that that mirrors our situation here. I would also refer the court back to In re Luna, which dealt with the question of the fact that the trust had the ability to enforce under ERISA the ability to collect the debt owed them, but that that doesn't itself make any money that boss or an employer like him has of his own, doesn't transform it into assets of the trust. And I would say with respect to the Moxley case that I think that the court obviously there didn't want to go farther than it needed to under the facts. But the distinction between whether or not it's the withdrawal liability being based in the statute versus based in the contract, I mean, the obligations all come from the statute. It all comes from ERISA, the requirement to make the contributions. The only effect of the contract, if the court accepts it, is that they have the ability within the plan or within the contract to state the parameters of the assets. But it should be treated the same way. It serves the same purpose, which is to try to ensure that ultimately the funds remain solvent. With respect to the Bullock standard, of course, one of the things that the Bullock court said was that they wanted to be sure that defalcation meant something other than fraud or embezzlement. It needed to have its own purpose. But the general theme was that within this section, within this realm, we're talking about forms of generally similar conduct is what they said. So we're talking about needing to have that culpable state of mind. And we quoted the court in our brief, the case of Verity. It was a U.S. Supreme Court case. Let's see. The site was 516 U.S. 498. Is that in your brief? It is, Your Honor. It's page 12, I believe, of our reply brief. Okay. And they talked in that case, and then in another case we cited out of the 11th Circuit, how hot and fuel, 828 F seconds, 710, they talked about the idea that an employer in this kind of scenario, you know, they're wearing two hats. And this is especially true. We didn't have the employer as an administrator here. But they wear the hat of running the business, and they wear the hat of if they do have any fiduciary responsibility, and we obviously don't concede that they do, but that you're not always a fiduciary. You're only a fiduciary to the extent that you are actually exercising control. And we didn't have Mr. Boss here exercising any control over assets. What we had was simply a contract obligation to make payments. And to the best of his ability, he did that. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Ikuta, Burns